JOHN W. VONHOLDT, JR., Plaintiff-Appellant, v. BARBA AND BARBA CONSTRUCTION, INC., Defendant-Appellee.

First District (4th Division) No. 1—95—1311

Opinion filed November 16, 1995.

George E. Brogan, of Evergreen Park, for appellant.

Kenneth A. Swartz, of Morton Grove (Gene A. Eich, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, John W. Vonholdt, Jr., appeals from an order of the circuit court dismissing his second-amended complaint which sought recovery against the defendant, Barba & Barba Construction, Inc., for breach of an implied warranty of habitability. In this appeal, the plaintiff invites this court to extend liability on an implied warranty of habitability theory beyond the builder-vendor of a new home to a builder that constructs a structural addition to an existing residence. For the reasons which follow, we decline the plaintiff's invitation and affirm the order dismissing his second-amended complaint.

The plaintiff alleges that he purchased a single-family residence in Glenview, Illinois, on November 5, 1993. The residence is approximately 3,200 square feet, 900 square feet of which consists of a multilevel addition constructed by the defendant in August 1982 for the plaintiff's predecessor in title. The defendant provided the labor, plans, and specifications for the construction and erected it from materials purchased by the defendant and paid for by the prior owner.

The plaintiff alleges that shortly after taking possession of the residence, he noticed a deflection of the wood flooring at the partition wall separating the master bedroom from the adjoining bathroom. The deflection created a depression in the floor which had been nearly concealed by thick carpeting. An investigation of the floor revealed that the addition was not constructed in accordance with the architectural plans approved by the Village of Glenview or the Glenview building code, which resulted in excessive stress on the floor joists and inadequate support for a portion of the roof and ceiling.

The plaintiff filed the instant action seeking recovery against the defendant for breach of an implied warranty of habitability. In response to the plaintiff's second-amended complaint, the defendant moved for dismissal pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) contending, *inter alia*, that the plaintiff failed to state a cause of action because the residence purchased by him was not a new home and the defendant was not a builder-vendor. Finding both that the defendant was not a builder-vendor and that there was an absence of privity between the plaintiff and the defendant, the trial court dismissed the plaintiff's second-amended complaint and denied a subsequent motion to reconsider. This appeal followed.

Because the complaint in issue was dismissed under section 2—615, the only question before this court is whether the plaintiff's second-amended complaint states a cause of action upon which relief could be granted. The issue is one of law, and our review is *de novo*. *Metrick v. Chatz* (1994), 266 Ill. App. 3d 649, 651-52, 639 N.E.2d 198.

In *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, our supreme court first considered the implied warranty of habitability as it relates to a contract for the sale of a new residence by a builder-vendor. After noting that such an implied warranty, although of recent origin, had found substantial acceptance in a number of jurisdictions, the *Petersen* court held:

> "Because of the vast change that has taken place in the method of constructing and marketing new houses, we feel that it is appropriate to hold that in the sale of a new house by a builder-vendor, there is an implied warranty of habitability which will support an action against the builder-vendor by the vendee for latent defects and which will avoid the unjust results of *caveat emptor* and the doctrine of merger. Many new houses are, in a sense, now mass produced. The vendee buys in many instances from a model home or from predrawn plans. The nature of the construction methods is such that a vendee has little or no opportunity to inspect. The vendee is making a major investment, in

many instances the largest single investment of his life. He is usually not knowledgeable in construction practices and, to a substantial degree, must rely upon the integrity and the skill of the builder-vendor, who is in the business of building and selling houses. The vendee has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is reasonably fit for use as a residence." (*Petersen*, 76 Ill. 2d at 39-40.)

The court further held that the warranty exists as an independent undertaking collateral to the contract to convey, and is implied as a separate undertaking of the builder-vendor because of the unusual dependent relationship of the vendee to the vendor. *Petersen*, 76 Ill. 2d at 41.

In *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, the supreme court extended the implied warranty of habitability from builder-vendors to subsequent purchasers, but limited the extension to latent defects which manifest themselves within a reasonable time after the purchase of the home. In so doing, the court held:

"It [the implied warranty of habitability] is a judicial innovation that has evolved to protect purchasers of new houses upon discovery of latent defects in their homes. While the warranty of habitability has roots in the execution of the contract for sale [citation], we emphasize that it exists independently [citation]. Privity of contract is not required. Like the initial purchaser, the subsequent purchaser has little opportunity to inspect the construction methods used in building the home. Like the initial purchaser, the subsequent purchaser is usually not knowledgeable in construction practices and must, to a substantial degree, rely upon the expertise of the person who built the home. If construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect. The compelling public policies underlying the implied warranty of habitability should not be frustrated because of the short intervening ownership of the first purchaser; in these circumstances the implied warranty of habitability survives a change of hands in the ownership." *Redarowicz*, 92 Ill. 2d at 183.

In *Kelley v. Astor Investors, Inc.* (1985), 106 Ill. 2d 505, 478 N.E.2d 1346, the court discussed the application of the implied warranty of habitability to a situation where an apartment building is converted to condominium units. The *Kelley* court acknowledged the existence of authority for imposing such an undertaking upon the developer-vendor when extensive reconstruction is undertaken in the conversion process. *Kelley*, 106 Ill. 2d at 512.

■ In this case, the plaintiff has made some very compelling argu-

ments that the public policy underlying the implied warranty of habitability running from the builder-vendor of a new home applies with equal force to a situation involving a major structural renovation of an existing home. Like the purchaser of a new home, the owner of an existing home which undergoes a substantial structural renovation is usually not knowledgeable in construction practices and must rely upon the expertise of the builder; like the purchaser of a new home, he makes a substantial financial investment; and like the purchaser of a new home, he has the right to receive that for which he has bargained, a structure reasonably fit for use as a residence.

The plaintiff has also cited authority for the proposition that the implied warranty of habitability should not be restricted to the undertaking of a builder-vendor or a developer-vendor. (See *Lempke v. Dagenais* (1988), 130 N.H. 782, 547 A.2d 290; *Minton v. The Richards Group* (1983), 116 Ill. App. 3d 852, 452 N.E.2d 835; but see *Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 484 N.E.2d 473.) Most persuasive among these is the decision of the supreme court of New Hampshire in *Lempke*, which allowed a subsequent purchaser of residential property to recover on an implied warranty theory against a builder hired by his predecessor in title to construct a garage on the property. *Lempke*, 130 N.H. 782, 547 A.2d 290.

We do not mean to depreciate the logical force of the plaintiff's arguments, but the fact remains that an action for breach of an implied warranty of habitability is a creature of judicial innovation. (*Redarowicz*, 92 Ill. 2d at 183; *Petersen*, 76 Ill. 2d at 38.) To be more precise, in this State, the action was created by our supreme court, and in each case where that court has addressed this cause of action, it has always spoken in terms of a right of action against a builder-vendor. See *Kelley*, 106 Ill. 2d at 512; *Redarowicz*, 92 Ill. 2d at 183; *Park v. Sohn* (1982), 89 Ill. 2d 453, 461, 433 N.E.2d 651; *Petersen*, 76 Ill. 2d at 39-40.

In order to grant the relief sought by the plaintiff, we would be required to eliminate the condition that the defendant occupy the position of a vendor, and hold that a warranty of habitability is implied into the contract of a builder that undertakes to construct a structural addition to an existing home. We view such a holding as a substantial modification of a right of action created by the supreme court. Acknowledging that the appellate court lacks the authority to modify decisions of the supreme court (see *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 551, 457 N.E.2d 1), we decline to extend the cause of action for breach of an implied warranty of habitability in a construction setting beyond a right of action against a builder-vendor of a new residence.

In this case, the allegations in the plaintiff's second-amended complaint clearly reflect that the defendant was not the builder-vendor of a new home. Consequently, the complaint failed to state a cause of action for breach of an implied warranty of habitability, and the trial court properly dismissed it for that reason.

Affirmed.

CAHILL and THEIS, JJ., concur.