692 N.E.2d 825 (1998)
295 Ill. App.3d 279
229 Ill.Dec. 836
BOARD OF DIRECTORS OF BLOOMFIELD CLUB RECREATION ASSOCIATION, Plaintiff-Appellant,
v.
HOFFMAN GROUP, INC., et al., Defendants-Appellees.
No. 2-97-0155.
Appellate Court of Illinois, Second District.
March 20, 1998.
C. Corey S. Berman, Jeffrey S. Youngerman, Kovitz, Shifrin & Waitzman, Buffalo Grove, for Bloomfield Club Recreation Assn. Bd. of Directors.
John H. Anderson, Jerome F. Buch, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, for Ahmanson Developments, Inc.
Joel M. Carlins, Kenneth W. Sullivan, Joel M. Carlins & Associates, Ltd., Chicago, for Hoffman Group, Inc.
Presiding Justice GEIGER delivered the opinion of the court:
The plaintiff, the Board of Directors of the Bloomfield Club Recreation Association, appeals from the October 4, 1996, order of the circuit court of Du Page County dismissing count I of its complaint pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 1996)). Additionally, the plaintiff appeals from the trial court's January 16, 1997, order denying its motion to reconsider the dismissal of its complaint and denying it leave to file an amended complaint. In its complaint, the plaintiff had sought damages from defendants, the Hoffman Group, Inc. (Hoffman), and Ahmanson Developments, Inc. (Ahmanson), for an alleged breach of the implied warranty of habitability. We affirm.
The following facts are relevant to the disposition of this appeal. The Bloomfield Club is a development comprised of single family homes, town homes, common areas, and common facilities located in Du Page County. The plaintiff, Bloomfield Club Recreation *826 Association, is the governing body of the homeowners of the Bloomfield Club and is responsible for the maintenance, operation, and management of all common areas and common facilities. The defendants developed, constructed, and sold all of the housing units in the Bloomfield Club as well as the common areas and facilities.
Pursuant to the declaration of covenants created by the defendants, each homeowner has a right of easement for the use of, access to, and ingress and egress over all of the common facilities. The clubhouse, which is included among the common facilities governed by the plaintiff, is a freestanding building that contains various rooms including a library, a meeting/party room, an exercise room, an indoor pool, and restrooms. Each homeowner pays assessments for the taxes, insurance, maintenance, repair, and upkeep of the clubhouse.
On February 29, 1996, the plaintiff filed a two-count complaint against the defendants. Count I of the plaintiff's complaint alleged that the defendants sold the clubhouse to the association and had implicitly warranted that it was suitable for the uses and purposes for which it was intended. Count I further alleged that, in breach of this warranty, the defendants developed, constructed, and sold the clubhouse with inadequate design, workmanship, and materials. Specifically, the plaintiff alleged the following defects: (1) the installation of roofing shingles of inferior quality; (2) the improper installation of roofing shingles with an insufficient number of nails; (3) inadequate roofing ventilation; and (4) the improper installation of the "Desert Aire" system in the pool area. Count I alleged that the cost of repairing these defective conditions was $130,000. Count II of the complaint is not at issue in this appeal.
On May 15, 1996, Ahmanson moved to dismiss the plaintiff's complaint pursuant to section 2-615 of the Code. On May 23, 1996, Hoffman also moved to dismiss the plaintiff's complaint pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 1996). Both defendants argued that, based upon Hopkins v. Hartman, 101 Ill.App.3d 260, 56 Ill.Dec. 791, 427 N.E.2d 1337 (1981), the implied warranty of habitability does not apply to commercial construction, such as the clubhouse, that is unoccupied by the purchaser. Rather, the defendants argued that the implied warranty of habitability applies only to residences occupied by the homeowner.
On July 1, 1996, the plaintiff filed its response to these motions. Relying upon Petersen v. Hubschman Construction Co., 76 Ill.2d 31, 27 Ill.Dec. 746, 389 N.E.2d 1154 (1979), and Herlihy v. Dunbar Builders Corp., 92 Ill.App.3d 310, 47 Ill.Dec. 911, 415 N.E.2d 1224 (1980), the plaintiff argued that the implied warranty of habitability had been extended to apply to commonly held residential property such as the clubhouse. The plaintiff argued that the homeowners in the instant case relied upon the developer to properly construct the clubhouse so that it would be "reasonably suited for its intended use" as required by Petersen. Petersen, 76 Ill.2d at 42, 27 Ill.Dec. 746, 389 N.E.2d 1154. The plaintiff further argued that the alleged defects in the clubhouse were analogous to the defects alleged in Herlihy.
On October 4, 1996, following argument, the trial court entered an order granting the defendants' motion and dismissing count I of the plaintiff's complaint with prejudice. The trial court explained its ruling as follows:
"The [implied warranty of habitability] has been extended to defects in common elements of condominium properties under certain circumstances. No cited case specifically permits any particular common element defect to be used universally as a basis for a breach of implied warranty of habitability claim. However, the Court finds instructive the case of Herlihy vs. Dunbar Builders Corp. * * * In that case, the reviewing court allowed a number of alleged defects [to] be actionable. The Court conditioned the viability of those claims to circumstances wherein the defect... may be found to interfere with a purchaser's legitimate expectation that the structure be reasonably suited for its use as a residence.' * * * The Court's statement of potential extension to common elements, as restricted, is consistent with the Supreme Court rationale in Petersen v. Hubschman Construction Co. * * * which created the doctrine.

*827 In the instant case, construction defects are alleged to have occurred in a free-standing recreational building which was part of the condominium property. This Court does not find the Herlihy case to expand the use of the implied warranty of habitability to that extent. This Court does not find recreational use of `amenities' to be included within the concept of habitability of residential structures. Therefore, the Court finds[] as a matter of law that the doctrine of implied warranty of habitability does not extend to the clubhouse building, as alleged defects in that building are incapable of interfering with a purchaser's legitimate expectation that his residence be reasonably suited for its use."
On November 1, 1996, the plaintiff filed a motion to modify or reconsider the trial court's October 4, 1996, order dismissing its complaint. On November 12, 1996, the trial court entered an order continuing the plaintiff's motion and allowing the plaintiff to file a proposed amended complaint by December 3, 1996. On December 3, 1996, the plaintiff filed its proposed amended complaint, which included all the allegations contained in its original complaint but also alleged that the clubhouse contained rooms and facilities that could be found in a home. The proposed amended complaint further alleged that the Bloomfield Club Recreation Association homeowners became property owners "with the full and reasonable expectation that they would be able to use such facilities as their own and that such facilities would be or would have been properly constructed." The amended complaint also alleged that the homeowners had used the clubhouse facilities as if they were located within the walls of their own homes.
On January 16, 1997, following argument, the trial court denied the plaintiff's motion to reconsider and did not grant the plaintiff leave to file its amended complaint. The plaintiff filed a timely notice of appeal.
The plaintiff argues that the trial court erred in finding that count I of its complaint had not stated a cause of action for breach of an implied warranty of habitability. In the alternative, the plaintiff argues that the trial court abused its discretion in refusing to allow the filing of its amended complaint.
At the outset, we note that a section 2-615 motion to dismiss attacks only the sufficiency of the complaint and should be decided on the allegations set forth in the complaint. Perkins v. Collette, 179 Ill.App.3d 852, 856, 128 Ill.Dec. 707, 534 N.E.2d 1312 (1989). In considering a section 2-615 motion, all well-pleaded facts alleged in the complaint are taken as true. T & S Signs, Inc. v. Village of Wadsworth, 261 Ill.App.3d 1080, 1083, 199 Ill.Dec. 467, 634 N.E.2d 306 (1994). Such motions should only be granted if it is clear that the plaintiff cannot prove any set of facts under the pleading that would entitle the plaintiff to the relief requested. Perkins, 179 Ill.App.3d at 856, 128 Ill.Dec. 707, 534 N.E.2d 1312. The standard of review is de novo. T & S Signs, Inc., 261 Ill.App.3d at 1084, 199 Ill.Dec. 467, 634 N.E.2d 306.
The implied warranty of habitability is a judicially created doctrine designed to avoid the unjust results of caveat emptor and the doctrine of merger. VonHoldt v. Barba & Barba Construction, Inc., 175 Ill.2d 426, 430, 222 Ill.Dec. 302, 677 N.E.2d 836 (1997). Illinois courts have traditionally applied the doctrine of the implied warranty of habitability to the sale of homes to protect innocent purchasers who do not possess the ability to determine whether the house they have purchased contains latent defects. VonHoldt, 175 Ill.2d at 430, 222 Ill.Dec. 302, 677 N.E.2d 836.
In Petersen v. Hubschman Construction Co., 76 Ill.2d 31, 39-40, 27 Ill.Dec. 746, 389 N.E.2d 1154 (1979), our supreme court held that there is an implied warranty of habitability in the sale of a new home by a builder-vendor which will support an action against the vendor by the vendee for latent defects. The supreme court noted that the mere fact that the house is capable of being inhabited does not satisfy this implied warranty. Petersen, 76 Ill.2d at 41, 27 Ill.Dec. 746, 389 N.E.2d 1154. Rather, implied in the contract of sale is a warranty that the house, when completed and conveyed to the vendees, will be reasonably suited for its intended use. Petersen, 76 Ill.2d at 42, 27 Ill.Dec. 746, 389 N.E.2d 1154. The supreme court in Petersen *828 stated that the vendee needs this protection because, in many instances, the vendee is making the largest single investment of his life. In so doing, he is usually relying upon the integrity and skill of the builder, who is in the business of building houses. Petersen, 76 Ill.2d at 40, 27 Ill.Dec. 746, 389 N.E.2d 1154. The supreme court noted that the vendee has a right to expect to receive a house that is reasonably fit for use as a residence. Petersen, 76 Ill.2d at 40, 27 Ill. Dec. 746, 389 N.E.2d 1154.
Since Petersen, Illinois courts have extended the circumstances under which claims based upon an implied warranty of habitability can be recognized. See Tassan v. United Development Co., 88 Ill.App.3d 581, 587, 43 Ill.Dec. 769, 410 N.E.2d 902 (1980) (warranty applies against developer-seller of new condominium unit); Redarowicz v. Ohlendorf, 92 Ill.2d 171, 185, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) (warranty applies to subsequent purchaser of home who discovers a latent defect within a reasonable time after the purchase of the home); VonHoldt v. Barba & Barba Construction, Inc., 175 Ill.2d 426, 432, 222 Ill.Dec. 302, 677 N.E.2d 836 (1997) (warranty applies to actions against a builder by a subsequent purchaser for latent defects caused in the construction of a significant structural addition to an existing residence). More specifically, the implied warranty has been applied to actions for damages arising out of defects in the common elements of a condominium building and vacant common land. See Herlihy v. Dunbar Builders Corp., 92 Ill.App.3d 310, 315-16, 47 Ill.Dec. 911, 415 N.E.2d 1224 (1980); Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co., 134 Ill.App.3d 402, 405, 89 Ill.Dec. 351, 480 N.E.2d 833 (1985).
In Herlihy v. Dunbar Builders Corp., 92 Ill.App.3d 310, 47 Ill.Dec. 911, 415 N.E.2d 1224 (1980), the plaintiffs, who were the original purchasers of condominium apartments in a 356-unit high-rise building, brought an action for damages against the developer-vendor of the condominium building. The plaintiffs alleged construction defects in such items as the balconies and railings; pedestrian ramps; driveway pavement; caulking of windows, frames, and balcony doors; and the heating, cooling, and ventilation systems in the laundry room and other common elements of the building. Herlihy, 92 Ill.App.3d at 313, 47 Ill.Dec. 911, 415 N.E.2d 1224. The Illinois Appellate Court, First District, held that the implied warranty of habitability arises from the sale of a new condominium to the original purchaser by the developer-vendor and may attach to common elements. Herlihy, 92 Ill.App.3d at 315, 47 Ill.Dec. 911, 415 N.E.2d 1224. The court found that defects in such shared portions of a building may be found to interfere with a purchaser's legitimate expectation that the structure is reasonably suited for its use as a residence. Herlihy, 92 Ill.App.3d at 315, 47 Ill.Dec. 911, 415 N.E.2d 1224.
In Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co., 134 Ill. App.3d 402, 89 Ill.Dec. 351, 480 N.E.2d 833 (1985), the plaintiff was a condominium association of townhouse owners that held title to common land in a planned unit development. The plaintiff brought an action against the developer of the land predicated upon a breach of an implied warranty of habitability. The plaintiff alleged that the land had "serious and continuous storm drainage problems." Briarcliffe, 134 Ill.App.3d at 404, 89 Ill.Dec. 351, 480 N.E.2d 833. In a previous appeal of the case (Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co. (Briarcliffe I), 118 Ill.App.3d 163, 73 Ill.Dec. 503, 454 N.E.2d 363 (1983)), the defendants had argued that the implied warranty of habitability did not extend to vacant common land. Briarcliffe, 134 Ill.App.3d at 405, 89 Ill.Dec. 351, 480 N.E.2d 833. However, this court held that "`[t]here may be circumstances in which a latent defect in the common land [could] affect the habitability of the living quarters.'" Briarcliffe, 134 Ill. App.3d at 405, 89 Ill.Dec. 351, 480 N.E.2d 833, quoting Briarcliffe I, 118 Ill.App.3d at 167, 73 Ill.Dec. 503, 454 N.E.2d 363.
Although Illinois courts have extended the implied warranty of habitability in some instances, Illinois courts have explicitly determined that the implied warranty of habitability does not extend to commercial leases. See J.B. Stein & Co. v. Sandberg, 95 Ill. App.3d 19, 26, 50 Ill.Dec. 544, 419 N.E.2d 652 *829 (1981) (commercial tenant cannot recover for damages to property under warranty); Hopkins, 101 Ill.App.3d at 263, 56 Ill.Dec. 791, 427 N.E.2d 1337 (purchasers of duplex residence that was never occupied by purchasers but was used as rental property were not within class of persons protected by warranty). As the supreme court has stated, the implied warranty of habitability is a "judicial innovation that has evolved to protect purchasers of new houses upon discovery of latent defects in their homes." Redarowicz, 92 Ill.2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324. Therefore, the implied warranty runs to the relatively unsophisticated buyer who is making a large investment in a structure to be used by him as a residence. Hopkins, 101 Ill.App.3d at 262, 56 Ill.Dec. 791, 427 N.E.2d 1337.
The plaintiff in the instant case argues that, based upon Herlihy and Briarcliffe, the trial court erred in dismissing its complaint because the implied warranty of habitability does apply to common facilities such as the clubhouse. Relying upon Petersen, the plaintiff contends that the key issue is whether the conveyed property is "reasonably suited for its intended use." Since count I of the complaint alleged that the clubhouse was not suited for its intended use, the plaintiff argues that its complaint was erroneously dismissed. We disagree.
Although the implied warranty of habitability was extended to the common elements of a condominium building in Herlihy and to vacant common land in Briarcliffe, we believe that the instant case is distinguishable from those cases. Unlike the defects alleged in Herlihy and Briarcliffe, the defects alleged herein were located in a freestanding recreational building that was not a part of the physical structure of the homes at issue. Thus, as the trial court found, the defects alleged herein could not be found to interfere with the homeowners' legitimate expectation that their homes were reasonably suited for their intended use as residences. See Herlihy, 92 Ill.App.3d at 315, 47 Ill.Dec. 911, 415 N.E.2d 1224. Nor can the alleged defects be said to affect the habitability of the homeowners' living quarters. See Briarcliffe, 134 Ill.App.3d at 405, 89 Ill.Dec. 351, 480 N.E.2d 833. As we have already noted, the implied warranty of habitability protects "purchasers of new houses upon discovery of latent defects in their homes." (Emphasis added.) See Redorowicz, 92 Ill.2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324. The warranty applies to the relatively unsophisticated buyer who is making a large investment in a structure to be used by him as a residence. See Hopkins, 101 Ill.App.3d at 262, 56 Ill. Dec. 791, 427 N.E.2d 1337. Since the alleged defects are not located within a structure to be used as a residence and do not affect the habitability of the homeowners' living quarters, we conclude that the plaintiff cannot prove any set of facts under its pleading that would entitle it to the relief requested. See Perkins, 179 Ill.App.3d at 856, 128 Ill.Dec. 707, 534 N.E.2d 1312. We therefore believe that the trial court properly dismissed count I of the plaintiff's complaint.
In so ruling, we also find Downes Swimming Pool, Inc. v. North Shore National Bank, 124 Ill.App.3d 457, 79 Ill.Dec. 857, 464 N.E.2d 761 (1984), and Harmon v. Dawson, 175 Ill.App.3d 846, 125 Ill.Dec. 406, 530 N.E.2d 564 (1988), distinguishable from the case at bar. Unlike the instant case, Downes and Harmon involved the alleged breach of the implied warranty of good workmanship, not a breach of the implied warranty of habitability. Downes, 124 Ill.App.3d at 463, 79 Ill.Dec. 857, 464 N.E.2d 761; Harmon, 175 Ill.App.3d at 849-50, 125 Ill.Dec. 406, 530 N.E.2d 564.
The plaintiff next argues that the trial court abused its discretion by denying it leave to file an amended complaint. As noted above, the plaintiff amended its complaint to contain the following new allegations: (1) that the clubhouse contained rooms and facilities that could be found in a house; (2) that the homeowners at issue became property owners "with the full and reasonable expectation that they would be able to use such facilities as their own and that such facilities would be or would have been properly constructed"; and (3) that the homeowners had used the clubhouse facilities as if they were located within the walls of their own homes.
The trial court's determination of whether to allow or deny amendment is a matter of *830 discretion and will not be reversed absent an abuse of discretion. In re Estate of Hoover, 155 Ill.2d 402, 416, 185 Ill.Dec. 866, 615 N.E.2d 736 (1993). The supreme court has applied the following four factors in determining whether the trial court's denial of a party's motion to amend constituted an abuse of discretion: (1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the movant had previous opportunities to amend. Hoover, 155 Ill.2d at 416, 185 Ill.Dec. 866, 615 N.E.2d 736.
In the case at bar, we conclude that the trial court did not abuse its discretion in denying the plaintiff leave to file its amended complaint. After reviewing the proposed amended complaint, we find that the allegations contained therein did not cure the defective pleading. See Hoover, 155 Ill.2d at 416, 185 Ill.Dec. 866, 615 N.E.2d 736. Rather, as in the original complaint, the defects alleged in the proposed amended complaint cannot be found to affect the habitability of the homeowners' living quarters. See Briarcliffe, 134 Ill.App.3d at 405, 89 Ill.Dec. 351, 480 N.E.2d 833. We therefore find that the trial court properly denied the plaintiff leave to file its amended complaint.
For the forgoing reasons, the judgment of the circuit court of Du Page County is affirmed.
Affirmed.
THOMAS, J., concurs.
BOWMAN, J., dissents.
Justice BOWMAN, dissenting:
I respectfully dissent. I disagree with the majority's conclusion that the trial court properly dismissed count I of plaintiff's complaint. The majority discusses in great length the doctrine of the implied warranty of habitability and the expansion of its applicability. While I agree with the authority upon which the majority relies, I disagree with its conclusion that the implied warranty of habitability does not apply to a clubhouse.
As the majority recognized, the supreme court in Petersen did not focus its analysis on the habitability of a residence. Petersen, 76 Ill.2d at 41, 27 Ill.Dec. 746, 389 N.E.2d 1154. Rather, the inquiry considered whether a residence was reasonably suited for its intended use. Petersen, 76 Ill.2d at 42, 27 Ill.Dec. 746, 389 N.E.2d 1154. Given that the implied warranty has been extended to common areas in condominiums (see Herlihy, 92 Ill.App.3d at 315, 47 Ill.Dec. 911, 415 N.E.2d 1224) and to vacant common land (see Briarcliffe, 134 Ill.App.3d at 405, 89 Ill.Dec. 351, 480 N.E.2d 833), I believe that it can be logically extended to a clubhouse. The majority's attempt to distinguish Herlihy and Briarcliffe on the basis that the clubhouse in question was "not a part of the physical structure of the homes" (p. 840 of 229 Ill.Dec. p. 829 of 692 N.E.2d) is strained. I believe that the freestanding nature of the clubhouse should not preclude the application of the implied warranty of habitability where a party has alleged sufficient facts to demonstrate that the structure was not reasonably suited for its intended use. In this case, the record reveals that the clubhouse included a library, a meeting/party room, an exercise room, restrooms, and other rooms. These features are similar to those that would be found in a residence. Thus, an owner's expectation that a residence should be reasonably suited for its intended use should likewise attach to a structure with similar features. I also believe that the trial court abused its discretion when it denied plaintiff leave to file an amended complaint that attempted to allege additional facts in support of its position that the clubhouse possessed residential features.
For the reasons set forth above, I respectfully dissent.