¶ 31 Certified question answered.
¶ 32 Appellate court judgment reversed.
*579 *1122 ¶ 33 Circuit court judgment reversed.
¶ 34 Cause remanded.
Chief Justice Karmeier and Justices Thomas, Garman, Theis, and Neville concurred in the judgment and opinion.
Justice Kilbride dissented, with opinion.
¶ 35 JUSTICE KILBRIDE, dissenting:
¶ 36 I disagree with the majority's conclusion that the implied warranty of habitability cannot be applied to the subcontractors in this case. In my view, applying the implied warranty of habitability to the circumstances here follows directly from our case law establishing and later extending the warranty. I would hold that plaintiffs may pursue a claim for breach of the warranty directly against the subcontractors for their defective work.
¶ 37 This court's case law establishes that the implied warranty of habitability is imposed as a matter of public policy. Redarowicz v. Ohlendorf , 92 Ill. 2d 171, 183, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) ; Petersen v. Hubschman Construction Co. , 76 Ill. 2d 31, 43, 27 Ill.Dec. 746, 389 N.E.2d 1154 (1979). This court first recognized the warranty in Petersen . In that case, this court stated the implied warranty of habitability is a "judicial innovation" used to give relief to purchasers of new homes who subsequently discover latent defects. Petersen , 76 Ill. 2d at 38, 27 Ill.Dec. 746, 389 N.E.2d 1154. The warranty is implied as a separate covenant in the contract for sale because of the "unusual dependent relationship" between the builder-vendor and the vendee. Petersen , 76 Ill. 2d at 41, 27 Ill.Dec. 746, 389 N.E.2d 1154. This court explained that construction methods had changed and vendees now have little or no opportunity to inspect new houses prior to making, in many instances, the largest single investment of their lives. Vendees are usually not knowledgeable about construction practices and must rely to a substantial degree upon the integrity and skill of the builder-vendor. Based on those concerns, this court held an implied warranty of habitability is included in the sale of a new house by a builder-vendor. Petersen , 76 Ill. 2d at 39-40, 27 Ill.Dec. 746, 389 N.E.2d 1154.
¶ 38 In Redarowicz , we extended the implied warranty of habitability to subsequent purchasers, again recognizing that the warranty is a "judicial innovation that has evolved to protect purchasers of new houses upon discovery of latent defects in their homes." Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324. While the warranty has roots in the contract for sale, this court emphasized that it exists independently and that "[p]rivity of contract is not required." Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324. Like the initial purchaser, a subsequent purchaser has little opportunity to inspect construction methods, is usually not knowledgeable about construction practices, and must rely to a substantial degree upon the expertise of the builder. Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324. Based on those considerations, this court concluded that, "[i]f construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect." Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324.
¶ 39 In Redarowicz , this court extended the implied warranty of habitability based on the "compelling public policies" recited in Petersen , despite the lack of privity of contract between the builder and the subsequent purchaser. Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324. We later explained that a second purchaser may receive the benefit of the implied warranty of habitability arising out of a sales contract between the first purchaser *580 *1123 and the builder-vendor because "he is merely stepping into the shoes of the first purchaser." Fattah v. Bim , 2016 IL 119365, ¶ 34, 402 Ill.Dec. 411, 52 N.E.3d 332.
¶ 40 This court has also held that the implied warranty of habitability extends to a subsequent purchaser seeking damages against a builder who constructed a significant addition to an existing residence. VonHoldt v. Barba & Barba Construction, Inc. , 175 Ill. 2d 426, 432, 222 Ill.Dec. 302, 677 N.E.2d 836 (1997). The decision in VonHoldt was based on the same public policy concerns recited in Petersen and Redarowicz . VonHoldt , 175 Ill. 2d at 431-32, 222 Ill.Dec. 302, 677 N.E.2d 836. This court has specifically stated:
"the same original policy considerations have consistently guided the growth of this doctrine. The policy, as explained in Petersen , applies the implied warranty of habitability to the sale of homes to protect today's purchasers, who generally do not possess the ability to determine whether the houses they have purchased contain latent defects. [Citations.] The purchaser needs this protection because, in most cases, the purchaser is making the largest single investment of his or her life and is usually relying upon the honesty and competence of the builder, who, unlike the typical purchaser, is in the business of building homes." Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc. , 186 Ill. 2d 419, 425, 238 Ill.Dec. 608, 712 N.E.2d 330 (1999).
¶ 41 Thus, it is beyond question that the implied warranty of habitability was first recognized and later extended by this court based on the public policy of protecting innocent purchasers. Redarowicz , 92 Ill. 2d at 185, 65 Ill.Dec. 411, 441 N.E.2d 324. The specific purpose of the warranty is to protect purchasers' legitimate expectations by holding builder-vendors accountable. Redarowicz , 92 Ill. 2d at 185, 65 Ill.Dec. 411, 441 N.E.2d 324. We have extended the warranty to accomplish that purpose despite the lack of privity of contract between the parties. Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324.
¶ 42 In Minton v. The Richards Group of Chicago , 116 Ill. App. 3d 852, 854-55, 72 Ill.Dec. 582, 452 N.E.2d 835 (1983), our appellate court held the warranty is applicable to subcontractors based on this court's established rationale. The appellate court observed that, while the warranty is rooted in the contract for sale, it exists independently to protect purchasers' reasonable expectations and privity of contract is not required to impose the warranty. Minton , 116 Ill. App. 3d at 854, 72 Ill.Dec. 582, 452 N.E.2d 835 (citing Redarowicz , 92 Ill. 2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 ). Our appellate court, therefore, held that the implied warranty of habitability applies to a subcontractor when the purchaser has sustained loss due to a latent defect caused by the subcontractor and the purchaser cannot recover from the builder-vendor. Minton , 116 Ill. App. 3d at 855, 72 Ill.Dec. 582, 452 N.E.2d 835.
¶ 43 In my view, the policy considerations underlying the implied warranty of habitability support applying the warranty to subcontractors. Similar to the builder-vendor, subcontractors are in the business of construction and building homes, and they are knowledgeable about construction methods. The purchaser of a new home relies not only on the competence and integrity of the builder-vendor but also on the competence of the subcontractors. A subcontractor's work on a new home is necessarily performed for the benefit of the purchaser. As with the builder-vendor, *581 *1124 a purchaser should be able to expect the subcontractor's work to contribute to "a house that is reasonably fit for use as a residence." See Petersen , 76 Ill. 2d at 40, 27 Ill.Dec. 746, 389 N.E.2d 1154. The purchaser has a reasonable expectation that subcontractors will perform their work competently, and subcontractors should likewise expect to be held responsible for the cost to repair latent defects they have caused.
¶ 44 The policy considerations that have consistently guided this court's decisions on whether to extend the implied warranty of habitability strongly favor applying the warranty to subcontractors. As we held in Redarowicz , "[i]f construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect." Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324. That statement may be applied equally to a subcontractor who created the latent defect. In those circumstances, the costs of repair should be borne by the responsible subcontractor, not by the innocent purchaser. See Redarowicz , 92 Ill. 2d at 183, 65 Ill.Dec. 411, 441 N.E.2d 324.
¶ 45 In sum, the policy considerations relied upon by this court in first recognizing and later extending the implied warranty of habitability apply with equal force here. A new home purchaser is necessarily dependent on those constructing the home, including both the builder-vendor and the subcontractors hired by the builder-vendor. Petersen , 76 Ill. 2d at 39-41, 27 Ill.Dec. 746, 389 N.E.2d 1154. This court has extended the implied warranty based on the policy considerations underlying the warranty without regard to privity of contract. Based on those policy considerations, the implied warranty of habitability should also be extended to apply directly to subcontractors. Plaintiffs should be able to pursue a claim for breach of the warranty directly against the subcontractors for their own defective work, regardless of whether the builder-vendor is insolvent or whether any other recourse is available. I would affirm the appellate court's decision answering the certified questions in the negative. Accordingly, I respectfully dissent.